IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEITHROY B. NURSE,

    Plaintiff,

      v.

THE CITY OF ALPHARETTA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:17-CV-1689-TWT

## OPINION AND ORDER

This is a civil rights case stemming from the alleged wrongful dismissal of the Plaintiff from his employment as an Alpharetta police officer. It is before the Court on the Defendants City of Alpharetta, Robert Regus, Kathy Bott, Wesley McCall, Sandy West, and Gary George's Motion to Dismiss [Doc. 28]. For the following reasons, the Defendants' Motion to Dismiss is GRANTED.

## I. Background

The Plaintiff, Keithroy B. Nash,[1] is a black man who was employed by the Defendant City of Alpharetta, Georgia as a police officer for approximately

---

[1]    The case caption as filed by the Plaintiff lists the Plaintiff's surname as Nurse, but in the body of his Complaint his surname is Nash. No explanation has been provided by the Plaintiff for the discrepancy, but the Court will assume that his correct name is Nash.

fifteen years.[2] The individual Defendants serve Alpharetta in various positions:
Robert Regus is the City Administrator, Kathy Bott is the Human Resources
Manager, Gary George is the Director of Public Safety, Wesley McCall is the
Deputy Director of Public Safety, and Sandy West is a Captain on the police
force.[3]

On March 27, 2016, according to the Complaint, Nash and two other
police officers responded to a call for assistance in Alpharetta.[4] When they
arrived at the scene, the person identified in the Amended Complaint as the
"caller" told the officers that he had been asked to give a woman a ride home,
but that the woman was so intoxicated she did not know where she lived.[5] The
officers themselves asked the woman where she lived, but she was unresponsive
to the officers' questions.[6] Nash called for medical assistance, but when the
EMTs arrived, the woman refused any help.[7]

By this time, the woman began to respond to the officers and had become
relatively lucid.[8] She informed the officers that she was staying at the

---

[2]      Compl. ¶¶ 5, 12.

[3]      *Id.* at ¶¶ 7-11.

[4]      *Id.* at ¶ 14.

[5]      *Id.* at ¶¶ 16-17.

[6]      *Id.* at ¶ 18.

[7]      *Id.* at ¶¶ 19-21.

[8]      *Id.* at ¶ 20.

Doubletree Hotel, but the caller told the officers that he did not know where the hotel was located.[9] Nash told the caller that, because his shift was now over, he could drive to the hotel and the caller could follow him with the woman.[10]

When they arrived at the Doubletree Hotel in Alpharetta, Nash and the caller discovered that the woman was not registered at that location, but that she was a guest at another Doubletree Hotel in Roswell, Georgia.[11] The caller refused to help the woman any further and left.[12] Meanwhile, the woman was still intoxicated and without any means of transportation.[13] Because of her condition, Nash agreed to give her a ride to her hotel on his way home.[14]

When Nash and the woman arrived at the Roswell Doubletree, the woman realized that her purse, which contained her driver's license and credit cards, was missing.[15] Because she did not have any identification, the hotel would not allow the woman into her room on her own.[16] The hotel agreed,

---

[9] *Id.* at ¶¶ 23-24.

[10] *Id.* at ¶ 25.

[11] *Id.* at ¶ 26.

[12] *Id.* at ¶ 27.

[13] *Id.* at ¶ 28.

[14] *Id.* at ¶ 29.

[15] *Id.* at ¶ 30.

[16] *Id.* at ¶ 31.

however, to allow the woman to check the room for any possible identification as long as she was accompanied by Nash and the hotel's security officer.[17]

Upon entering the hotel room, the woman found a credit card she had apparently left in the hotel room and showed it to the hotel security officer as proof of her identity. Satisfied, the security officer left the room. Nash, on the other hand, remained behind because the woman had questions about her missing purse. Nash explained to the woman that she needed to file a police report and keep a copy of it as proof that she had lost her license.[18] The hotel security officer then returned to the room to reverify the woman's information.[19] According to the Complaint, at the time the hotel security officer reappeared, the woman was "alert, fully clothed, sitting upright, and speaking to both the Plaintiff and the security officer."[20] Nash then left the hotel.[21]

Some time later, Nash was informed that he was the subject of an Internal Affairs investigation by the Defendant West and the Alpharetta Police Department in reference to this incident.[22] Nash was informed that the woman had accused him of sexual assault, and that a criminal investigation was being

---

[17]    *Id.* at ¶ 32.

[18]    *Id.* at ¶ 33.

[19]    *Id.* at ¶ 34.

[20]    *Id.* at ¶ 35.

[21]    *Id.* at ¶¶ 36-38.

[22]    *Id.* at ¶¶ 39-40.

conducted by the Roswell Police Department.[23] According to the Complaint, Nash cooperated with the investigations, including taking a polygraph examination, yet Nash was never informed as to the exact nature of the conduct he was charged with.[24] During the course of the investigation, West ordered Nash to not have any contact with anyone in connection with the incidents or investigations.[25]

While no criminal charges were ever filed against Nash, Alpharetta did eventually charge him with numerous violations of City policy, including allowing the woman to ride in the front seat of his car and failing to inform his supervisor that he was still in service after going off-duty.[26] As a result of these violations, Nash was fired by the Alpharetta Police Department.[27] After he was fired, Alpharetta then filed a report with the Georgia Peace Officers Standards and Training Council, which Nash claims contained false and intentionally misleading information regarding Nash and his conduct during the incident.[28]

---

[23]     *Id.* at ¶ 41.

[24]     *Id.* at ¶¶ 42-43.

[25]     *Id.* at ¶ 44.

[26]     *Id.* at ¶¶ 46-48, 50-51, 53.

[27]     *Id.* at ¶ 62.

[28]     *Id.* at ¶¶ 67-68.

However, Nash's certification as a police officer was revoked by the Council as a result of the report.[29]

Nash eventually filed a charge of racial discrimination with the Equal Employment Opportunity Commission, and received a Right to Sue letter from the EEOC.[30] He then filed this action on May 10, 2017. In his Complaint, Nash alleges that his termination for the alleged policy violations was against the City's policy of "progressive discipline."[31] Nash claims that, even assuming the policy violations occurred (which he disputes), he should have been subjected to a less severe sanction than termination.[32] Nash further claims that he was subjected to more severe punishment than white police officers, and that the individual Defendants knew and approved of this disparity in discipline.[33]

As a result, Nash alleges three counts against the Defendants. In Count I, he alleges violations of his constitutional right to equal protection against all of the Defendants.[34] In Count II, he alleges violations of his right to due process against George, West, and the City of Alpharetta.[35] And in Count III, he claims

---

[29]  *Id.* at ¶ 69.

[30]  *Id.* at ¶ 70.

[31]  *Id.* at ¶ 61.

[32]  *Id.* at ¶ 62.

[33]  *Id.* at ¶¶ 63-64.

[34]  *Id.* at ¶¶ 72-84.

[35]  *Id.* at ¶¶ 85-92.

he was subjected to discriminatory treatment and a hostile work environment by all of the Defendants.[36]  The Defendants now move to dismiss the Complaint under Rules 8(a), 12(b)(2), 12(b)(6), and 41(b) of the Federal Rules of Civil Procedure.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[37] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[38] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[39] Generally, notice pleading is all that is required for a valid complaint.[40] Under notice

---

[36]    *Id.* at ¶¶ 93-108.

[37]    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[38]    *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

[39]    *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[40]    *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[41]

When a party has moved to dismiss a complaint for lack of personal jurisdiction, and "no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant."[42] The plaintiff establishes a prima facie case by presenting "enough evidence to withstand a motion for directed verdict."[43] A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . ."[44] The facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted.[45] If, however, the defendant submits affidavits challenging the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction.[46] If the plaintiff's complaint

---

[41]    *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

[42]    *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

[43]    *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

[44]    *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995).

[45]    *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995).

[46]    *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010); *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264,

and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.[47]

## III. Discussion

### A. Personal Jurisdiction over the Defendant George

The Defendant George first moves to dismiss the claims against him for lack of personal jurisdiction. The Amended Complaint states that George is currently Alpharetta's Director of Public Safety and may be served through the City Administrator's office.[48] However, George has submitted a declaration stating that he retired and moved to Missouri prior to this lawsuit being filed.[49] Nash has not challenged George's declaration. Thus, the question is whether this Court has personal jurisdiction over George, a nonresident defendant.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."[50] This means that federal courts generally follow a two step process for determining whether they have personal jurisdiction over nonresident defendants: (1) whether personal jurisdiction exists over the

---

1269 (11th Cir. 2002).

[47]    *Madara*, 916 F.2d at 1514.

[48]    Amended Compl. ¶ 11.

[49]    George Decl., Defs.' Mot. to Dismiss, Ex. 1 [Doc. 28-1].

[50]    *Daimler AG v. Bauman*, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014).

nonresident defendant under the forum state's long-arm statute and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause.[51]

Unlike many other states which have enacted long-arm statutes that extend as far as the Constitution allows, Georgia has taken a different approach. Georgia's long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process."[52] This means that sometimes Georgia's long-arm statute extends beyond, and is therefore limited by, procedural due process, while in other situations it is more restrictive.[53] In particular, the statute provides in relevant part for personal jurisdiction where a defendant:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; [or]

---

[51]    *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

[52]    *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010).

[53]    *Id.* at 1262.

(4) Owns, uses, or possesses any real property situated within this state . . . .[54]

as long as the plaintiff's cause of action "arises out of" that conduct.[55] As Nash has not alleged any torts, nor has he alleged claims related to any in-state property owned by George, the only remaining question is whether George transacted any "business" within Georgia.

Georgia courts have interpreted "transacts any business" fairly broadly, meaning that as long as the "nonresident defendant has purposefully done some act or consummated some transaction in [Georgia]," Georgia courts will have personal jurisdiction.[56] In this case, George was previously a Georgia domiciliary, was employed by a Georgia municipality, and the alleged causes of action arise from his conduct in Georgia. Thus, George has transacted business in Georgia under the definition of the state long-arm statute. The Court also finds for similar reasons that George has sufficient minimum contacts with Georgia to satisfy the Due Process Clause. Consequently, George is subject to personal jurisdiction here.

---

[54]    O.C.G.A. § 9–10–91.

[55]    *Id.* at 1264.

[56]    *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517 (2006). *See also Diamond Crystal*, 593 F.3d at 1260 n.11 (explaining why courts should only use the first prong of the *Aero Toy Store* test during the long-arm statute analysis).

## B. Sufficiency of Pleading

The Defendants have also moved to dismiss the entire Complaint under Rule 41(b) for failing to comply with a previous Order of this Court. Rule 41(b) grants district courts the authority and discretion to dismiss complaints for failure to comply with court orders. The Eleventh Circuit has articulated a two-part test to determine whether dismissal under Rule 41(b) is warranted. First, "there must be both a clear record of willful conduct and a finding that lesser sanctions are inadequate."[57] Second, courts "must consider the possibility of alternative, lesser sanctions."[58] While the decision to dismiss under Rule 41(b) is a matter committed to a district court's discretion, "[d]ismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances."[59]

In the prior Order, the Court dismissed Nash's original Complaint for failure to comply with the pleading requirements of Rule 8. The Court allowed Nash to refile within thirty days, but if he did so, the Court directed him to "specifically define the causes of action" being asserted, and "indicate which claims are being asserted against which defendants."[60] Nash did eventually

---

[57]     *Baltimore v. Jim Burke Motors, Auto.*, 300 F. App'x 703, 707 (11th Cir. 2008) (quotations and citations omitted.)

[58]     *Id.*

[59]     *Id.* (quoting *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir.1985)).

[60]     *See* September 28, 2017 Opinion and Order, at 3 [Doc. 26].

refile, and he has made an effort in the Amended Complaint to individually list defendants under each of his claims. He has also separated his equal protection and due process claims into separate counts. This demonstrates a good faith effort on Nash's part to correct the defects in his original Complaint. Dismissal under Rule 41(b) is, therefore, unwarranted.

That does not mean, however, that the Amended Complaint is in the clear. The Amended Complaint must still comply with the requirements of Rule 8. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires plaintiffs to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief."[61] This means that it must "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."[62]

Counts I and II meet this standard by individually naming the Defendants and separating Nash's equal protection and due process claims into separately numbered counts. Count III, however, still suffers from the same defects the Court noted in its previous Order. Namely, it states that "the Plaintiff has been subjected to discriminatory treatment based upon his race," and that he "has been subjected to a hostile work environment based on racial

---

[61]     Fed. R. Civ. P. 8(a)(2).

[62]     *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

discrimination" in violation of Title VII of the Civil Rights Act of 1964.[63] Hostile work environment and discriminatory treatment claims are two separate causes of action under Title VII. It is not clear whether Nash is asserting one, the other, or both of these claims. Because he has failed to provide adequate notice to the Defendants as to which of these two claims he is asserting, Count III fails to meet the pleading requirements of Rule 8(a).

While the normal course of action when a complaint does not comply with Rule 8 would be to direct Nash to refile, the Court has already done that once in this case. Nash has had an opportunity to amend his Complaint, and does not seek to amend it again in response to the Defendants' motion to dismiss on the merits. As such, the Court will simply assume that Nash is attempting to assert both Title VII claims, and will consider them as two separate counts for the purpose of addressing the merits of the Complaint.

### C. Racial Discrimination Claims

In Count I of the Amended Complaint, Nash alleges that the Defendants violated his Fourteenth Amendment right to equal protection by treating him differently than other white officers. "The Equal Protection Clause requires the State to treat all persons similarly situated alike or, conversely, to avoid all classifications that are 'arbitrary or irrational' and those that reflect 'a bare . .

---

[63]     Amended Compl. ¶¶ 99, 102, 103.

. desire to harm a politically unpopular group.'"[64] In *McDonnell Douglas Corp. v. Green*,[65] the Supreme Court created a framework for analyzing these sorts of claims. Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. "To establish a prima facie case of racial discrimination on the basis of disparate treatment, the plaintiff must show: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees more favorably; and (4) he was qualified to do the job."[66] Alternatively, in the absence of a comparator, a plaintiff may also state a claim if he alleges sufficient facts to present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."[67]

Nash completely fails to carry this initial burden, as the Amended Complaint contains nothing more than conclusory statements that he was subjected to more severe punishment than white officers.[68] "While legal

---

[64]     *Glenn v. Brumby*, 663 F.3d 1312, 1315 (11th Cir. 2011) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446-47 (1985)).

[65]     411 U.S. 792 (1973).

[66]     *Lewis v. City of Kennesaw, Ga.*, 504 F. App'x 880, 882 (11th Cir. 2013). In particular, "[w]hen a plaintiff alleges discriminatory discipline, the quantity and quality of the comparator's misconduct must be nearly identical to the plaintiff's." *Id.*

[67]     *Id.*

[68]     *See, e.g.*, *Ramirez v. Holder*, 590 F. App'x 780, 788 (10th Cir. 2014) (holding that "bald and unsubstantiated" allegations that the plaintiff was treated differently than others could not "support a plausible constitutional

conclusions can provide the framework of a complaint, they must be supported by factual allegations."[69] Here, Nash offers no examples of situations in which similarly situated white police officers were treated more leniently.[70] Nor do the allegations in the Amended Complaint present a "convincing mosaic of circumstantial evidence" that his race was ever a factor in his termination.[71] Instead, he merely states that he "was subjected to far more severe punishment than that given to the white police officers."[72] Given such "bald and unsubstantiated" allegations, the Court finds that Nash's equal protection claim must be dismissed.[73]

Nash's Title VII claims of racial discrimination and hostile work environment fail for similar reasons. First, Title VII racial discrimination claims

_____

challenge.").

[69]    *Iqbal*, 129 S.Ct. at 1950.

[70]    *See, e.g.*, *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502 (5th Cir. 2014) (example of a case in which the plaintiff alleged that he was specifically treated differently than two other police officers who had been suspended for the same actions and at the same time as he was).

[71]    *Lewis*, 504 F. App'x at 882.

[72]    Amended. Compl. ¶ 63.

[73]    *Ramirez*, 590 F. App'x at 788. *See also Uppal v. Hosp. Corp. of Am.*, No. 8:09-cv-634-T-33TMB, 2011 WL 2631869, at *3 (M.D. Fla. July 5, 2011) (collecting cases and dismissing discrimination claims where allegations were merely conclusory).

are analyzed similarly to equal protection claims; if one fails, the other must

also.[74] Second, a hostile work environment claim requires Nash to establish that:

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.[75]

Once again, the Amended Complaint contains only conclusory allegations that

the Defendants have exhibited "a pattern of more severe disciplinary action to

African Americans as to their white counterparts," and denied black officers

promotions that went to white officers.[76] The Amended Complaint contains no

factual allegations to support such a claim. As such, Nash's Title VII claims

must also be dismissed.

### D. Procedural Due Process Claim

In Count II, Nash brings his second constitutional claim, alleging that the

Defendants West and George violated his right to procedural due process by

denying him the ability to obtain evidence on his behalf, the opportunity to

---

[74] *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) ("[D]iscrimination claims ... brought under the Equal Protection Clause [of the Fourteenth Amendment], 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, are subject to the same standards of proof and employ the same analytical framework.").

[75] *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010).

[76] Amended Compl. ¶¶ 66, 100-101.

confront his accusers, and by filing a false report.[77] Additionally, Nash claims that the City of Alpharetta "approved and ratified" their actions.[78]

"[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally [ ] inadequate process."[79] The only protected interests Nash claims have been deprived are his law enforcement certification and his professional reputation.[80] Neither of these deprivations, however, constitute a procedural due process violation.

First, assuming *arguendo* that his certification is a protected property interest, the Amended Complaint states Nash's law enforcement certification was revoked by the Georgia Peace Officers Standards and Training Council, which is not a party to this case.[81] As such, none of the Defendants can be said to have deprived him of that interest.

---

[77] *Id.* at ¶¶ 86-87.

[78] *Id.* at ¶ 88.

[79] *J.R. v. Hansen*, 803 F.3d 1315, 1320 (11th Cir. 2015) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

[80] Amended Compl. ¶ 73. The Court overlooks the fact that this allegation is contained in his equal protection claim and not in his due process claim.

[81] *See id.* at ¶ 67; Defs.' Mot. to Dismiss, at 10-11 [Doc. 28].

Second, while courts have recognized personal reputation as a protected liberty interest in certain circumstances,[82] Nash has not alleged that his reputation was harmed in a way that violates the Due Process Clause. Procedural due process claims regarding harm to one's personal reputation require a plaintiff to show that there was: "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing."[83] Nash alleges that the Defendants submitted a false report to the Council, but never alleges any facts to say why it was false. Furthermore, Nash had, at minimum, the opportunity to seek a writ of mandamus from a state court after he was terminated, but nothing in the Amended Complaint suggests he ever did so.[84] Thus, he had a meaningful

---

[82]    *See Campbell v. Pierce Cty., Ga. By & Through Bd. of Comm'rs of Pierce Cty.*, 741 F.2d 1342, 1344 (11th Cir. 1984) (holding that damage to reputation is actionable when it is sustained in connection with termination of employment).

[83]    *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1042-43 (11th Cir. 1989).

[84]    *Cotton v. Jackson*, 216 F.3d 1328, 1332 (11th Cir. 2000) ("Under Georgia law, when no other specific legal remedy is available and a party has a clear legal right to have a certain act performed, a party may seek mandamus.").

opportunity to clear his name.[85] Nash's procedural due process claim is dismissed accordingly.

### E. Miscellaneous Reasons to Dismiss the Complaint

In addition to the analysis above, there are other reasons why claims against specific Defendants in the Amended Complaint should be dismissed. For instance, Nash fails to allege that the Defendants Regus, Bott, or McCall did anything at all. The only allegation against these Defendants is that they "knew and approve [sic]" of or "ratified" the alleged discrimination, or that it occurred under their "administration."[86] This is not enough to sustain a claim against any of these individuals.

Furthermore, the Amended Complaint does not demonstrate a basis for holding Alpharetta liable under § 1983. To state a § 1983 claim against a government entity, Nash must show that his rights were deprived because of a

---

[85]     *Id.* at 1333 (finding that plaintiff could not state a procedural due process claim where he never sought a writ of mandamus in state court to order a name-clearing hearing). *See also Luck v. Pippert*, No. 2:05-CV-37-WCO, 2006 WL 418485, at *4 (N.D. Ga. Feb. 21, 2006) (O'Kelley, J.) (plaintiff failed to state claim for violation of due process in being terminated without hearing, based on alleged false accusations of wrongdoing, where he failed to show he sought mandamus because "mandamus would be an adequate remedy under state law to ensure that plaintiff is not deprived of his due process rights"); *Cochran v. Collins*, 253 F. Supp. 2d 1295, 1305 (N.D. Ga. 2003) (Pannell, J.) (public-safety officer terminated for alleged wrongdoing barred from bringing due process claim where he failed to seek writ of mandamus to attain new termination hearing).

[86]     Amended Compl. ¶¶ 44-45, 78, 99-101.

policy or custom the City had in place.[87] Isolated actions on the part of individual officials are insufficient,[88] as are "vague and conclusory allegations" like those contained in the Amended Complaint.[89]

Lastly, any Title VII claims against the individual Defendants must be dismissed because "[t]he relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."[90] "The only proper individual defendants in a Title VII action would be supervisory employees in their capacity as agents of the employer."[91] However, where the employer has already been named as a defendant, "naming of the individuals is unnecessary, inappropriate, and not authorized by the applicable law."[92]

---

[87]     *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).

[88]     *Id.* at 404 (holding that municipalities cannot be held liable under theories of *respondeat superior*; instead, a plaintiff must show that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.") (emphasis in original).

[89]     *Harvey v. City of Stuart*, 296 F. App'x 824, 826 (11th Cir. 2008). *See also* Amended Compl. ¶¶ 66, 99.

[90]     *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).

[91]     *Hinson v. Clinch Cty., Georgia Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000) (citing *Busby*, 931 F.2d at 772).

[92]     *Richey v. City of Lilburn*, 127 F. Supp. 2d 1250, 1256 (N.D. Ga. 1999).

## IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss [Doc. 28]

is GRANTED.

SO ORDERED, this 7 day of February, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge